# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Halerewicz*, 2013 IL App (4th) 120388

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN J. HALEREWICZ, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0388 |
| Filed | October 31, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction and sentence for aggravated driving under the influence of alcohol and driving while his license was revoked were upheld over his contentions that the trial court erred in refusing to define "ordinary care" for the jury, that Class X sentencing was improper and that his sentence was excessive in view of his heart condition, since the trial court's response to the jury's request for a definition of "ordinary care" using language approved by the parties was not an abuse of discretion, a Class X sentence was properly imposed where the record showed defendant had six DUI violations, even though all six were not aggravated DUI violations, and the mitigating factors, including defendant's heart problems, were outweighed by the aggravating factors and the need to protect the public from defendant's drunk driving. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-CF-594; the Hon. Leslie J. Graves, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Karen Munoz, and Duane E. Schuster, all of State Appellate Defender's Office, of Springfield, for appellant. |
|---|---|
| | John Milhiser, State's Attorney, of Springfield (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Presiding Justice Steigmann and Justice Turner concurred in the judgment and opinion. |

## OPINION

¶ 1 In February 2012, a jury convicted defendant, John J. Halerewicz, of driving under the influence of alcohol (DUI), aggravated DUI with a revoked license, and driving while his driver's license was revoked. In April 2012, the trial court sentenced defendant to concurrent terms of 10 years' imprisonment for aggravated DUI and 3 years for driving while his license was revoked.

¶ 2 Defendant appeals, arguing (1) the trial court erred in refusing to define the term "ordinary care" for the jury, (2) Class X sentencing was improper where it only applies to six or more aggravated DUI convictions and defendant's instant aggravated DUI conviction was not his sixth such conviction, and (3) the court abused its discretion in sentencing defendant to a term of imprisonment. We affirm.

¶ 3                           I. BACKGROUND

¶ 4 The State charged defendant with (1) DUI (count I), (2) aggravated DUI with a revoked license (count II), and (3) driving while his license was revoked (count III).

¶ 5 During defendant's February 28, 2012, jury trial, Springfield police officer Mark Marinelli testified he was performing a premises check at a gas station when he observed a silver van strike the curb as it pulled into the parking lot. An individual exited the vehicle and tripped over a curb as he entered the gas station. Because a passing train obscured Marinelli's view, he did not observe the individual reenter the van. However, Marinelli called other officers to help search for the van. Officers located the van a few blocks away approximately five to seven minutes later. Once the van was relocated, Marinelli observed it rolling through a stop sign. According to Marinelli, the van did not make a complete stop until after the white line. The driver of the van also failed to properly use his turn indicator. At that point, Marinelli initiated a stop of the vehicle.

¶ 6    Marinelli identified defendant as the driver of the van. Marinelli observed defendant had "glassy eyes" and "slurred speech." Marinelli also smelled a "strong odor of alcohol coming from inside the vehicle." Marinelli testified defendant admitted consuming five or six beers. At that point, Marinelli turned the traffic stop over to Ryan Maddox, a DUI officer, who was already assisting with the stop.

¶ 7    Officer Maddox testified he responded to Marinelli's request to look for the van because he believed the driver was possibly impaired. Once Maddox located the vehicle, he "paced" it "traveling 20 in a 30 mile an hour zone." Maddox also testified defendant failed to signal a right turn 100 feet prior to the turn as required. Instead, defendant signaled the turn "very close to 10 feet" before the turn. Once the vehicle was stopped, Maddox observed the driver, whom he identified as defendant, had glassy, bloodshot eyes. Defendant's eyelids were "heavy" and he displayed slow, slurred speech. Maddox testified the smell of alcohol on defendant's breath was "overwhelming." Defendant's head was swaying back and forth while he was sitting in the driver's seat.

¶ 8    Defendant stated he was coming from a bar where he worked and had consumed "five or six beers." Defendant admitted his driver's license was revoked. The State then introduced a certified copy of defendant's driving abstract, which showed defendant's license was revoked at the time of the stop. Defendant refused to take any field-sobriety tests, stating it was not in his best interest to do so. When Maddox asked why defendant did not want to take the tests, defendant told him he did not know if he would be able to pass them. When Maddox asked defendant if it "wasn't that good of a decision [for him] to drive," defendant stated, "probably."

¶ 9    Maddox observed defendant was "very slow" in exiting the van. Maddox testified "it appeared he was trying to gain his balance." In addition, defendant's "walking gait was very slow" and his body was noticeably "swaying back and forth as he stood." At that point, Maddox arrested defendant for DUI. The State introduced a video taken from Maddox's squad car, which was played for the jury. While at the jail, defendant refused to take a Breathalyzer test, stating it would not be in his best interest to do so.

¶ 10    Thereafter, the jury convicted defendant of DUI, aggravated DUI, and driving while his license was revoked.

¶ 11    On March 14, 2012, defendant filed a posttrial motion, which the trial court denied.

¶ 12    During defendant's April 10, 2012, sentencing hearing, the trial court found because this was defendant's sixth DUI offense, he was eligible for Class X sentencing. Counts I (DUI) and II (aggravated DUI) merged for sentencing purposes, and the court sentenced defendant as stated.

¶ 13    On April 18, 2012, defendant filed a motion for reduction of sentence, arguing (1) the trial court erred in finding he violated section 11-501(a)(1) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501(a)(1) (West 2010)) for the sixth time, and (2) the sentence was excessive where the court failed to adequately consider imprisonment would endanger his medical condition.

¶ 14    Following an April 23, 2012, hearing, the trial court denied defendant's motion for reduction of sentence. During the hearing, the court noted defendant could have received a

lesser sentence had he provided any indication he understood the danger he posed to the community and the consequences of his actions. Instead, the court observed defendant's attitude demonstrated a "lack of remorse" and the sense he "was a victim in this situation."

¶ 15    This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, defendant argues (1) the trial court erred in refusing to define the term "ordinary care" for the jury, (2) Class X sentencing was improper where it only applies to six or more aggravated DUI convictions and defendant's instant aggravated DUI conviction was not his sixth such conviction, and (3) the court abused it discretion in sentencing defendant to a term of imprisonment.

¶ 18                          A. Jury-Instruction Claim

¶ 19    Defendant argues the trial court erred in refusing to define the term "ordinary care" for the jury. Defendant concedes his trial counsel failed to object and preserve the issue in his posttrial motion. Thus, absent plain error, defendant has forfeited review of the issue on appeal. However, defendant urges us to review the issue for plain error.

¶ 20    Under the plain-error doctrine, we will review an otherwise forfeited issue where a clear and obvious error occurs and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010). "If error is found, the court then proceeds to consider whether either of the two prongs of the plain-error doctrine have been satisfied. Under both prongs, the burden of persuasion rests with the defendant." *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059. Before we can decide if there was plain error, however, we must first determine if any error occurred at all. For the following reasons, we conclude because there was no error, there can be no plain error. See *People v. Johnson*, 218 Ill. 2d 125, 139, 842 N.E.2d 714, 722 (2005).

¶ 21    Prior to deliberations, the trial court instructed the jury as follows: "A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000). During deliberations, the jury asked the court to define the term "ordinary care." Thereafter, the following colloquy took place between the court, the State, and defendant's trial counsel:

"THE COURT: We have a question. [']How do you define ["]ordinary care?[" ][']
Okay, what I usually say in these circumstances, [is] [']it is for you to determine the definition of ordinary care based on your experiences in life, based on your common sense and experiences in life.['] I mean I have to give them an answer.

MR. SRONCE [(defendant's trial counsel)]: Was there an instruction given as to reasonable doubt? Was that an instruction?

-4-

MS. STEERE [(assistant State's Attorney)]: No.

THE COURT: Say that again.

MR. SRONCE: My understanding was, I thought maybe beyond a reasonable doubt–there is no definition for that either, and I didn't know–I wasn't sure if that was explained in the jury instructions, and perhaps we can cut and paste that language.

\*\*\*

MR. SRONCE: I have no objection to your answer.

THE COURT: There [are] two ways to do this. One way is to say, you have everything you need to make the decision in this case, or to say, it is up to you to determine what ordinary care is based on your life experiences.

MR. SRONCE: Either one, Judge, is fine with us.

MS. STEERE: My preference would be to go with the first version, that they have the law.

THE COURT: I think that's actually the more appropriate [one]. [']You have been given your instructions in their entirety.['] Okay, [this is] what I am going to say, [']the Court does not have the authority to define ordinary care for you. You have been given the instructions in their entirety,['] period."

¶ 22    A trial court's decision on how to respond to jury questions during deliberations is "ordinarily left to the discretion of the trial court." *People v. Falls*, 387 Ill. App. 3d 533, 537, 902 N.E.2d 120, 124 (2008). Thus, a trial court's decision to answer a jury question will not be disturbed absent an abuse of discretion. *People v. Brown*, 319 Ill. App. 3d 89, 100, 745 N.E.2d 173, 184 (2001).

¶ 23    In this case, the trial court responded to the jury's question with the language the parties agreed to. Under these circumstances, we cannot say the court abused its discretion in the answer given. To allow defendant to benefit on appeal based on a response he agreed to "would offend all notions of fair play." *People v. Villarreal*, 198 Ill. 2d 209, 227, 761 N.E.2d 1175, 1184 (2001). " '[A]n accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error.' " *People v. Parker*, 223 Ill. 2d 494, 508, 861 N.E.2d 936, 944 (2006) (quoting *People v. Carter*, 208 Ill. 2d 309, 319, 802 N.E.2d 1185, 1190 (2003)); *Villarreal*, 198 Ill. 2d at 228, 761 N.E.2d at 1185 (citing *People v. Abston*, 263 Ill. App. 3d 665, 671, 635 N.E.2d 700, 705 (1994) (when the defendant acquiesces in the trial court's course of action, the defendant cannot later raise that course of action as error on appeal)). Defendant argues the answer given was different than the one counsel agreed to. However, at the time, counsel stood silent and did not object. Moreover, the difference between the agreed language of "you have everything you need to make the decision in this case" and the actual instruction given of "You have been given the instructions in their entirety," is *de minimus*. Further, the fact the court added the phrase "The court does not have the authority to define [']ordinary care['] for you," while incorrect, is of no import.

¶ 24    Assuming, *arguendo*, the trial court's response was error, our review of the record shows the evidence in this case was not closely balanced and the response did not create a

substantial risk defendant was denied a fair trial. Section 11-501(a)(2) of the Vehicle Code provides "[a] person shall not drive or be in actual physical control of any vehicle within this State while *** under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2010). A defendant is under the influence when, as a result of consuming alcohol or any other intoxicating substance, " 'his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Gordon*, 378 Ill. App. 3d 626, 631, 881 N.E.2d 563, 567 (2007) (quoting Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000)). The State can use circumstantial evidence to prove a defendant guilty of DUI. *People v. Diaz*, 377 Ill. App. 3d 339, 345, 878 N.E.2d 1211, 1216 (2007). The credible testimony of the arresting officer by itself is sufficient to sustain a conviction of driving under the influence. *People v. Janik*, 127 Ill. 2d 390, 402-03, 537 N.E.2d 756, 761-62 (1989) (holding that the arresting officer's testimony about the odor of alcohol, defendant's watery eyes, and defendant's poor performance on the field-sobriety tests was sufficient evidence of intoxication).

¶ 25        In this case, Marinelli testified he observed a silver van strike the curb as it pulled into a gas station parking lot. The driver of the van tripped over a curb while entering the gas station. A silver van matching the description of the one at the gas station was located by police a few minutes later, a few blocks away. Marinelli observed that van rolling through a stop sign and failing to properly signal a turn. Maddox testified the van was proceeding at 20 miles per hour in a 30-mile-an-hour zone. Both Marinelli and Maddox identified defendant as the driver of the van and testified he had glassy eyes and slurred speech. They also testified they smelled a strong odor of alcohol coming from the vehicle. Both officers testified defendant admitted drinking five to six beers. Maddox testified defendant was very slow and off balance when exiting the van. Defendant was also "swaying back and forth as he stood" outside the van.

¶ 26        Further, defendant refused to take either the field-sobriety tests or submit to a Breathalyzer test. Evidence of a defendant's refusal to take a breath test is relevant and admissible. 625 ILCS 5/11-501.2(c)(1) (West 2010); see also *People v. Garriott*, 253 Ill. App. 3d 1048, 1052, 625 N.E.2d 780, 784 (1993) (refusal to submit to Breathalyzer test is relevant as circumstantial evidence of the defendant's consciousness of guilt). The trier of fact can infer a defendant refused to submit to the test because it would confirm his guilt. *Garriott*, 253 Ill. App. 3d at 1052, 625 N.E.2d at 784.

¶ 27        Because we do not find any error was committed, we do not find plain error. As a result, defendant's argument is forfeited.

¶ 28                                    B. Class X Sentencing

¶ 29        Defendant argues the trial court erred in sentencing him as a Class X offender. Defendant contends Class X sentencing was improper where it only applies to six or more aggravated DUI convictions and defendant's instant aggravated DUI conviction was not his sixth such conviction. Specifically, defendant maintains section 11-501(d)(2)(E) of the Vehicle Code (625 ILCS 5/11-501(d)(2)(E) (West 2010)) includes, for purposes of counting the number of prior violations, only aggravated DUIs under subsection (d) and not nonaggravated DUIs

under subsection (a).

¶ 30 Like defendant's previous argument, he acknowledges he failed to raise this specific issue at sentencing or otherwise preserve this issue in his motion to reconsider sentence. "Where a defendant fails to object to an error at trial and include the error in a posttrial motion he or she forfeits ordinary appellate review of that error." *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 18, 987 N.E.2d 938. As before, however, defendant argues this court should review his claim under a plain-error analysis. As previously stated, the first step in conducting plain-error review is to determine whether error occurred at all. *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009).

¶ 31 The propriety of a Class X sentence presents a question of statutory interpretation, which we review *de novo*. *People v. Zimmerman*, 239 Ill. 2d 491, 497, 942 N.E.2d 1228, 1232 (2010). With regard to questions of statutory interpretation:

"'Our primary objective is to ascertain and give effect to legislative intent, the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning. [Citation.] In determining the plain meaning of statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it. [Citation.] Where the language of the statute is clear and unambiguous, we must apply it as written, without resort to extrinsic aids to statutory construction. [Citation.]

If the language is ambiguous, making construction of the language necessary, we construe the statute so that no part of it is rendered meaningless or superfluous. [Citation.] We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent.'" *People v. O'Laughlin*, 2012 IL App (4th) 110018, ¶ 18, 979 N.E.2d 1023 (quoting *People v. Perry*, 224 Ill. 2d 312, 323-24, 864 N.E.2d 196, 204 (2007)).

¶ 32 Section 11-501 of the Vehicle Code (625 ILCS 5/11-501 (West 2010)) provides, in relevant part, the following:

"§ 11-501. Driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds or any combination thereof.

(a) A person shall not drive or be in actual physical control of any vehicle within this State while:

***

(2) under the influence of alcohol[.]

* * *

(c) Penalties.

(1) Except as otherwise provided in this Section, any person convicted of violating subsection (a) of this Section is guilty of a Class A misdemeanor.

(2) A person who violates subsection (a) or a similar provision a second time shall be sentenced to a mandatory minimum term of either 5 days of imprisonment or 240 hours of community service ***.

(3) A person who violates subsection (a) is subject to 6 months of imprisonment,

an additional mandatory minimum fine of $1,000, and 25 days of community service in a program benefitting children if the person was transporting a person under the age of 16 at the time of the violation.

(4) A person who violates subsection (a) a first time, if the alcohol concentration in his or her blood, breath, or urine was 0.16 or more ***, shall be subject, in addition to any other penalty that may be imposed, to a mandatory minimum of 100 hours of community service and a mandatory minimum fine of $500.

(5) A person who violates subsection (a) a second time, if at the time of the second violation the alcohol concentration in his or her blood, breath, or urine was 0.16 or more ***, shall be subject, in addition to any other penalty that may be imposed, to a mandatory minimum of 2 days of imprisonment and a mandatory minimum fine of $1,250.

(d) Aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof.

(1) Every person convicted of committing a violation of this Section shall be guilty of aggravated driving under the influence of alcohol *** if:

(A) the person committed a violation of subsection (a) or a similar provision for the third or subsequent time[.]
* * *

(2)(A) Except as provided otherwise, a person convicted of aggravated driving under the influence of alcohol *** is guilty of a Class 4 felony.

(B) A third violation of this Section or a similar provision is a Class 2 felony. ***

(C) A fourth violation of this Section or a similar provision is a Class 2 felony, for which a sentence of probation or conditional discharge may not be imposed. ***

(D) A fifth violation of this Section or a similar provision is a Class 1 felony, for which a sentence of probation or conditional discharge may not be imposed. ***

(E) A sixth or subsequent violation of this Section or similar provision is a Class X felony."

¶ 33  Defendant argues the statutory language of section 11-501(d)(2)(E), *i.e.*, "A sixth or subsequent violation of this Section or similar provision is a Class X felony," is ambiguous where the phrase "this Section" can refer to either a nonaggravated DUI under subsection (a) of section 11-501 or an aggravated DUI under subsection (d) of section 11-501. According to defendant, he should not become eligible for Class X sentencing until his sixth or subsequent conviction for aggravated DUI, and not just his sixth total DUI violation. In essence, defendant argues the statute should be read as two separate sections comprised of nonaggravated and aggravated DUIs. We disagree.

¶ 34  While defendant contends the phrase "this Section" refers just to subsection (d), our reading of the statute reveals the phrase "this Section" refers to section 11-501 as a whole.

To begin, the statute does not reference subsection (d) as a "section." Instead, the statute specifically and repeatedly references that provision as "subsection (d)." See 625 ILCS 5/11-501(d)(2)(F), (d)(2)(G), (d)(2)(H), (d)(2)(I), (d)(2)(J), (d)(3) (West 2010). If the General Assembly intended to limit the application of Class X sentences to only aggravated DUI violations under subsection 11-501(d), it knew how to do so. Indeed, specific subsections are repeatedly referenced throughout section 11-501. See, *e.g.*, 625 ILCS 5/11-501(c), (d), (e), (g) (West 2010). In the case of subsection 11-501(d), however, the legislature specifically chose the phrase "this Section," not "this subsection," when referencing what constitutes a qualifying violation for calculating Class X eligibility. Thus, the plain language of section 11-501(d)(2)(E) shows the phrase "this Section" was intended to encompass all of section 11-501. The legislature's use of the capitalized "S" in the phrase "this Section" supports our finding. See *People v. Kennedy*, 372 Ill. App. 3d 306, 308, 867 N.E.2d 1154, 1156 (2007) (finding section 6-303(d-3) of the Vehicle Code is not ambiguous where the term "this Section" as used in subsection (d-3) refers to section 6-303).

¶ 35 We also reject defendant's argument his bifurcated interpretation of the statute would avoid absurd results from sudden escalations in penalties. As an example, defendant points out under the current sentencing scheme there exists a "sudden jump" from a Class A misdemeanor for a first DUI offense to a Class 2 felony for a third DUI offense. However, the "sudden escalation" defendant complains of shows the General Assembly's intention to penalize repeat offenders more severely. Indeed, a "statute which imposes additional punishment upon conviction for a second or subsequent conviction is highly penal and must be strictly construed and that such 'enhanced penalty' statutes are enacted as a warning to a first offender of the consequences of a second conviction." *People v. Harrison*, 225 Ill. App. 3d 1018, 1022, 588 N.E.2d 1256, 1258 (1992).

¶ 36 In sum, general violations of section 11-501, specifically nonaggravated DUIs, may be used to elevate an offense to a Class X felony for sentencing purposes. See *People ex rel. Glasgow v. Kinney*, 2012 IL 113197, ¶ 13, 970 N.E.2d 506 (finding a prior misdemeanor DUI could be used to enhance a defendant's fourth DUI offense to a Class 2 felony under section 11-501(d)(2)(c)). We note the statute uses the term "violation" and not "conviction." Accordingly, dispositions resulting in supervision would also count toward the sentencing calculus. See *People v. Jordan*, 218 Ill. 2d 255, 263, 843 N.E.2d 870, 875 (2006) ("charges resulting in dispositions of supervision may be treated as prior committed offenses for purposes of imposing subsequent penalties"); *People v. Sheehan*, 168 Ill. 2d 298, 308-09, 659 N.E.2d 1339, 1344 (1995).

¶ 37 Here, the fact the instant offense was not defendant's sixth *aggravated* DUI did not prevent the court from imposing a Class X sentence. We note defendant does not argue on appeal his prior violations of section 11-501 number less than six. Accordingly, defendant was properly subjected to Class X sentencing under section 11-501(d)(2)(E) of the Vehicle Code (625 ILCS 5/11-501(d)(2)(E) (West 2010)). Because we do not find error, we do not reach the question of plain error. Thus, defendant's contention of error on appeal is forfeited.

¶ 38                                    C. Excessive-Sentence Claim

¶ 39        Defendant argues the trial court abused its discretion in sentencing him to a prison term
where it failed to adequately consider his health condition as mitigating. We disagree.

¶ 40        In this case, defendant was eligible for a maximum sentence of 30 years in prison for
aggravated DUI. 730 ILCS 5/5-4.5-25(a) (West 2010) (the nonextended-term sentencing
range for a Class X felony is between 6 and 30 years). The State asked for a 12-year sentence.
The trial court imposed a 10-year prison sentence, which is within the statutorily permissible
range. Where a sentence falls within statutory guidelines, it will not be disturbed on review
absent an abuse of discretion. *People v. Bridgewater*, 388 Ill. App. 3d 787, 797, 904 N.E.2d
171, 179-80 (2009) (quoting *People v. Grace*, 365 Ill. App. 3d 508, 512, 849 N.E.2d 1090,
1093-94 (2006)); *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010).

¶ 41        A sentence within the statutory range will not be deemed excessive unless it is greatly
at variance with the spirit and purpose of the law or manifestly disproportionate to the nature
of the offense. *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 22, 959 N.E.2d 703. "A
reviewing court must afford great deference to the trial court's judgment regarding
sentencing because that court, having observed the defendant and the proceedings, is in a far
better position to consider such factors as the defendant's credibility, demeanor, general
moral character, mentality, social environment, and habits than a reviewing court, which
must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24, 957 N.E.2d
102.

¶ 42        While defendant argues the trial court did not adequately consider his health in
mitigation, evidence of defendant's medical condition was presented at sentencing. During
the sentencing hearing, defendant's trial counsel argued even his requested minimum six-
year sentence could be "a life sentence" because of defendant's "heart condition." Counsel
also argued defendant was a "ticking time bomb for a heart attack." In addition, defendant's
wife testified he "has severe heart disease. He has five blockages, two in the left coronary
artery, one in the right coronary artery that's completely blocked, and the one in the right, it
is in the groin area, between the leg and the groin. It's completely blocked as well." Further,
the presentence investigation report (PSI), which the trial court stated it considered, provided,
in part, the following:

> "[Defendant] reports that he is in poor physical health. The defendant indicated that he
> currently has a heart condition that requires open heart surgery. [Defendant] also stated
> that he has high blood pressure and cholesterol. The defendant reported that he has had
> two heart attacks, the first in 2001, the second in 2002."

The PSI also stated records from Springfield Clinic confirmed defendant's condition. Thus,
evidence of defendant's medical condition was presented at sentencing. In fact, the court
commented defendant was well aware of his heart condition and kept drinking anyway. There
is a presumption the sentencing court considered mitigating evidence before it. *People v.
Flores*, 404 Ill. App. 3d 155, 158, 935 N.E.2d 1151, 1155 (2010). Moreover, the "existence
of mitigating factors does not require the trial court to reduce a sentence from the maximum
allowed." *People v. Pippen*, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001).

¶ 43        Defendant also argues the trial court erred in failing to specifically reference the

statutorily required consideration of whether imprisonment would endanger defendant's medical condition (see 730 ILCS 5/5-5-3.1(a)(12) (West 2010)). While that consideration is a required statutory mitigating factor to be accorded weight when fashioning a sentence, "[t]he trial court is not required to expressly indicate its consideration of all mitigating factors and what weight each factor should be assigned." *People v. Kyse*, 220 Ill. App. 3d 971, 975, 581 N.E.2d 285, 288 (1991). Instead, it is presumed a trial court considered all relevant mitigating and aggravating factors in fashioning a sentence, and that presumption will not be overcome absent explicit evidence from the record that the trial court failed to consider mitigating factors. *Flores*, 404 Ill. App. 3d at 158, 935 N.E.2d at 1155. We find no such indication here.

¶ 44　　Here, the trial court stated it considered all the evidence in mitigation and aggravation. The court weighed the mitigating evidence against defendant's extensive record of prior DUI and driving-while-revoked violations. We note defendant's PSI shows numerous such violations beginning in the 1980s. The court found the evidence in mitigation was outweighed by the factors in aggravation. The court also cited the need to protect the community from defendant's repeated drinking and driving. Defendant was eligible for a 30-year sentence for aggravated DUI. We cannot say the court abused its discretion by sentencing defendant to 10 years in prison.

¶ 45　　　　　　　　　　　　　　III. CONCLUSION

¶ 46　　For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 47　　Affirmed.