2020 IL App (1st) 181000-U

No. 1-18-1000

SIXTH DIVISION
MARCH 27, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 13317 |
| | ) | |
| PIERRE LAY, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in imposing a four-year sentence for the defendant's conviction for aggravated battery.

¶ 2    Following a jury trial, defendant Pierre Lay was found guilty of aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2016)) and sentenced to four-years' imprisonment. On appeal, the defendant contends that his sentence is excessive in light of the nature of the offense and his

nonviolent criminal history. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                                    BACKGROUND

¶ 4       The defendant was charged by information with three counts of aggravated battery based on knowingly spitting in the face of Ryan Galiardo, a Chicago police officer who was engaged in his official duties. Because the defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recount only the facts necessary to resolve the issue raised on appeal.

¶ 5       At trial, Officer Ryan Olmstead testified that, on August 31, 2017, he and his partner, Ryan Galiardo, responded to a police-involved shooting on the 4100 block of West Madison Stree in Chicago. It was a large crime scene, with about 100 officers responding. As Olmstead and Galiardo were securing the scene with crime scene tape and attempting to push back the crowd of bystanders, Olmstead saw an officer run towards the defendant, who rode a bicycle through the crime scene. The defendant was detained and placed into a marked police squad car. Olmstead and Galiardo then transported the defendant to the police station.

¶ 6       On the way to the station, the defendant became increasingly agitated and repeatedly told the officers that they could have "just let [him] go." He yelled at the officers and spit, multiple times, on the glass divider separating him from the officers. After the defendant made a physical threat to the officers, Olmstead informed him that he would be charged with aggravated assault of a police officer. Olmstead informed the station that they would bring the defendant directly to the lock up area because defendant was increasingly agitated and belligerent.

¶ 7       When they arrived at the police station, Olmstead asked for a detention aide to assist in bringing the defendant into the lockup because, in Olmstead's experience, introducing a new

person into the situation often helped detainees calm down. As the defendant stepped out of the vehicle, Olmstead heard, but did not see, defendant spit on Galiardo. Olmstead saw moisture on Galiardo's vest and body. The defendant did not spit on Olmstead. Olmstead was equipped with a body camera, and it was activated when he transported the defendant to the police station. Video from Olmstead's body camera was admitted into evidence and published to the jury.

¶ 8 On cross-examination, Olmstead admitted that, while transporting the defendant to the police station, the defendant told the officers he was going to spit on them, to which Olmstead replied, "spit on me, I dare you." Olmstead acknowledged that someone had called the defendant an "idiot" more than once.

¶ 9 Officer Galiardo testified that he and Olmstead were securing a crime scene on the date in question when he saw officers chasing after the defendant, who rode a bicycle about half-a-block through the crime scene. After the defendant was detained and placed in handcuffs, Galiardo and Olmstead transported him to the police station.

¶ 10 Video from the squad car showing the defendant being transported to the police station and from Galiardo's body camera was admitted into evidence and published to the jury. The video showed the defendant spit on Galiardo. Galiardo testified that the saliva got in his right eye and on his vest.

¶ 11 On cross-examination, Galiardo stated that the video did not show him clutch his eye or state, "he got my eye." The video showed Galiardo tell the defendant, "you rode through that crime scene like a f*** idiot." When the defendant was being transported to the police station and told the officers he was going to spit on them, Galiardo said "do it."

¶ 12    Detective Daniel Honda testified that, on the date in question, he was assigned to investigate an aggravated battery of a police officer. He went to the 11th District, where he spoke with the defendant, Officers Galiardo and Olmstead, and Jonathan Aarom, a detention aide. After Honda read the defendant his *Miranda* rights, the defendant told Honda that he spit on the officers because he was mad, and he would have spit on both officers. Defendant acknowledged that he also threatened the officers.

¶ 13    The jury found the defendant guilty of aggravated battery. The court denied the defendant's motion for a new trial.

¶ 14    The defendant's presentence investigation (PSI) report showed that he was 30 years old at the time of the offense. He had full-time work experience, and his bosses said he was a hard worker. He has two children and is close with his family. The PSI noted that the defendant could benefit from anger management classes and "may be a good candidate for Adult Probation Services."

¶ 15    At sentencing, the court heard arguments in aggravation and mitigation. In aggravation, the State argued that the defendant had an extensive criminal history, including a 2006 felony conviction for a Class 4 possession of heroin, for which he received probation, a 2007 Class 2 drug offense, for which he was sentenced to intensive probation that was terminated unsatisfactorily, and a 2013 Class 4 conviction for possession of burglary tools, for which he was sentenced to one year in prison. The PSI further showed that the defendant had previous convictions for criminal trespass, for which he was sentenced to 10 days in jail, aggravated assault/use of a deadly weapon, for which he was sentenced to 50 days in jail, and aggravated assault of a Peace Officer/Volunteer,

for which he was sentenced to 30 days in jail. The State asked the court to sentence the defendant to a term toward the maximum of the extended-term sentencing range.

¶ 16    In mitigation, defense counsel presented letters in support of the defendant from the defendant's family, a former co-worker, and a case worker. Counsel offered, as an explanation for the offense, that "[b]oth parties were heated" and the defendant was unaware of the police shooting prior to his arrest. Counsel argued that the defendant was taken into custody after he "bumped" the crime scene tape. Counsel acknowledged the defendant's background, noting that he had been sentenced to probation more than ten years ago, and argued that the defendant had most recently received a sentence of one year in prison. Counsel requested "a sentence of probation, or alternatively the minimum, three years." Counsel also informed the court that the defendant's family was present in court and that his mother attended every court date.

¶ 17    In allocution, the defendant stated, "I truly apologize for what happened." The defendant also apologized to his family, and stated he had two children he needed to care for. He said he had something "going on" at the time, and that the officers did too. He stated he did not expect sympathy and took responsibility for his actions, and wished the situation had gone "way better than it did."

¶ 18    In rendering its sentencing decision, the trial court noted that it had "read and reviewed the presentence investigation report. I have considered the facts and circumstances of the case I heard. I presided over the trial. I had an opportunity to review my notes. I have considered the five letters that are part of the mitigation tendered by the Defense." The court stated that it had no reason to doubt the letters, which all said that the defendant was nice, helpful, goes "above and beyond," and was a good employee. The court also noted the defendant's work history and that people were

present in court on his behalf. The court stated that it had "considered all the statutory factors both in aggravation and mitigation."

¶ 19    The court pointed out that this battery offense was aggravated and a Class 2 felony because a police officer was the victim. The court rejected the defendant's argument that both sides were "heated" and pointed out that the officers were doing their jobs. The court noted that probation "wouldn't be appropriate under these circumstances based on what [the defendant] did, [his] background and all the factors that [the court] heard during the course of the trial and this sentencing hearing." The court recognized that the defendant "made a bad choice and probably will do better," and sentenced him to four years in prison for aggravated battery, to be followed by two years of mandatory supervised release.

¶ 20    The trial court denied the defendant's motion to reconsider sentence. In doing so, the court noted that there had been a pretrial conference, and the court had offered a sentence of three years in prison. The court stated that this was not a case of defendant being penalized for exercising his right to trial, and noted that at the time it made the three-year offer, the court had not heard the testimony, defendant's allocution, or learned everything about the case that it did during trial. The court stated that the letters in mitigation had an impact and indicated a likelihood defendant would be rehabilitated. After noting defendant faced an extended-term sentence, the court stated that his sentence of "four years is not excessive in the least."

¶ 21                                    ANALYSIS

¶ 22    On appeal, the defendant contends that his four-year sentence is excessive given the nature of the offense and his nonviolent background and asks that this court reduce his sentence to the minimum term of three years in prison. He specifically argues that the trial court failed to consider

evidence in mitigation that the officers provoked him and that he had expressed remorse for his actions. He also maintains that the court erroneously considered his conduct as more severe because it was directed at a police officer, and misstated the evidence when it stated he spat on multiple officers.

¶ 23    In imposing the defendant's sentence, the trial court was required to balance the seriousness of the offense and the objective of restoring defendant to useful citizenship. Ill. Const. 1970, art. I § 11. The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference because the trial court had the opportunity to observe the defendant and the proceedings. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). The trial court is presumed to have considered all factors at its disposal in mitigation and the defendant's rehabilitative potential; and the defendant has the burden of showing the contrary. *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 95. To rebut this presumption, a defendant must make an affirmative showing that that the sentencing court did not consider the relevant factors. *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38. In reviewing a defendant's sentence, this court will not reweigh the sentencing factors, and will not disturb the sentence imposed by the trial court absent an abuse of discretion. *Alexander*, 239 Ill. 2d at 213, 214. A sentence constitutes an abuse of discretion where it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 212.

¶ 24    Aggravated battery of a peace officer is a Class 2 felony with a sentencing range of three to seven years in prison. 720 ILCS 5/12-3.05(d)(4), (h) (West 2016); 730 ILCS 5/5-4.5-35 (West 2016). A sentence that is within the statutory range is presumed proper. *People v. Brown*, 2015 IL App (1st) 130048, ¶ 42. The defendant's sentence of four years in prison was within the statutory

range and, therefore, is presumptively proper. See *id.* To rebut this presumption, the defendant must show that his sentence greatly varied from the purpose and spirit of the law. *Alexander*, 239 Ill. 2d at 212-13.

¶ 25    Here, the defendant is unable to make this showing. The record reflects that the court, in imposing sentence, properly considered all factors in aggravation and mitigation. The trial court expressly stated that it read and reviewed the PSI, and considered the facts and circumstances of the case, the letters in mitigation, and "all the statutory factors both in aggravation and mitigation." The court also considered the defendant's employment history and that he had a network of people who supported him. Thus, the record does not rebut the presumption that the trial court considered relevant statutory factors in mitigation. The defendant's argument to the contrary essentially asks us to reweigh the sentencing factors and substitute our judgment for that of the trial court, which we cannot do. See *Alexander*, 239 Ill. 2d at 213, 214-15.

¶ 26    Nonetheless, the defendant argues that the trial court failed to consider in mitigation that he acted in response to "strong provocation." The record, however, belies this contention.

¶ 27    The trial court explicitly recognized that the officers had called the defendant "an idiot" and that, when the defendant was in the back of the police vehicle and told the officers he was going to spit on them, they essentially said, "go ahead." See *People v. Halerewicz,* 2013 IL App (4th) 120388, ¶ 43 (quoting *People v. Kyse,* 220 Ill. App. 3d 971, 975 (1991)) " '[t]he trial court is not required to expressly indicate its consideration of all mitigating factors and what weight each factor should be assigned.' ").

¶ 28    Similarly, and contrary to the defendant's contention, the record shows the trial court was aware of the defendant's statement in allocution, during which the defendant told the court, "I truly

apologize for what happened." In denying the defendant's motion to reconsider sentence, the court expressly stated that this was not a case of the defendant being penalized for exercising his right to trial, and expressly noted that at the time it made the three-year offer, the court had not heard the testimony, defendant's allocution, or learned everything about the case that it did during trial. As such, there is nothing in the record to rebut the presumption that the trial court considered defendant's statement in allocution.

¶ 29    The defendant also argues that the trial court improperly considered that the victim in this case was a police officer. But the court may properly consider the "nature and circumstances" of the offense in deciding the appropriate sentence, which in this case, included the fact that the defendant spit on Officer Galiardo. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 21. The trial court "is not required to refrain from any mention of the factors that constitute elements of an offense, and the mere reference to the existence of such a factor is not reversible error." *Id.* ¶ 22. Here, the trial court stated that the offense was a class 2 felony because the victim in this case was a police officer and noted that the statute said it was a special circumstance where someone spits on a peace officer. The mere mention of this fact was not tantamount to improper consideration of an aggravating factor.

¶ 30    Finally, the defendant argues that the court misstated the evidence when it repeatedly stated at sentencing that he spit on two people; when in fact the evidence revealed he only spit on Officer Galiardo. To be sure, when sentencing a defendant, the trial court " 'must exercise care to [e]nsure the accuracy of information considered[.]' " *People v. Jackson*, 149 Ill. 2d 540, 549 (1992) (quoting *People v. Adkins*, 41 Ill. 2d 297, 300 (1968)).

¶ 31    But a misstatement of the evidence does not require remand or resentencing if it did not lead to a greater sentence. See *People v. Cotton*, 393 Ill. App. 3d 237, 266 (1st Dist. 2009). Rather, the defendant must demonstrate that the court "relied on the particular" misstatements when it sentenced the defendant. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47. In determining whether the court relied on the misstated evidence "a reviewing court should not focus on a few words or statements made by the trial court, but must consider the record as a whole." *People v. Sims*, 403 Ill. App. 3d 9, 24 (2010).

¶ 32    Here, after reviewing the record as a whole, we find that, although the trial court made misstatements demonstrating a misapprehension of the evidence at trial, the defendant's sentence was not the product of the trial court's failure to recall the trial evidence correctly. Rather, the record shows that the sentence reflected the trial court's consideration of the evidence in mitigation, including the defendant's rehabilitative potential, his criminal history, and the nature of the offense. Given this record, we are satisfied that the trial court did not impose a longer sentence based on facts not in evidence.

¶ 33    Accordingly, we conclude that the trial court did not abuse its discretion in sentencing the defendant to four years' imprisonment, a term one year above the statutorily required minimum sentence for aggravated battery.

¶ 34    Finally, because this case does not involve a novel legal issue or complicated factual matter, we believe that oral argument would not further our consideration of this appeal. We thus order that, pursuant to Supreme Court Rule 352(a) as amended, this case is taken for consideration without oral argument.

¶ 35                                CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.