NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230261-U

NO. 4-23-0261

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 7, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JILL A. DILLON, | ) | No. 22CF96 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE DOHERTY delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court did not err in denying defendant's motion to withdraw her guilty
plea or in the sentence it imposed. Defendant's conviction in count II runs afoul of
the one-act, one-crime rule and is therefore vacated.

¶ 2    Pursuant to a negotiated agreement, defendant Jill A. Dillon pleaded guilty to

financial exploitation of an elderly person (720 ILCS 5/17-56(a) (West 2022)) (count I) and

unlawful use of a debit card (*id.* § 17-36(i)) (count II). The circuit court imposed concurrent

sentences of five years and ordered restitution. It subsequently denied defendant's motion to

withdraw her guilty plea. On appeal, defendant argues that: (1) she should be allowed to withdraw

her guilty plea because the court failed to admonish her that she may be required to pay restitution

and, in the alternative, counsel was ineffective for failing to preserve this argument; (2) her

conviction for unlawful use of a debit card violates one-act, one-crime principles; and (3) the

sentence imposed was excessive and based on the sentencing judge's personal animus towards her.

For the reasons that follow, we affirm in part and vacate the conviction in count II.

¶ 3                                              I. BACKGROUND

¶ 4            In 2022, defendant worked for Teresa Boward as a caregiver. The State charged defendant in a two-count information with financial exploitation of an elderly person and unlawful use of a debit card. Regarding the exploitation charge, the State alleged that between March 1, 2022, and April 8, 2022, defendant obtained control over Boward's property by deception while standing in a position of trust or confidence. The unlawful use charge alleged that between March 1, 2022, and April 8, 2022, defendant obtained Boward's debit card through deception and used the card with an intent to defraud.

¶ 5            Defendant reached a plea agreement with the State under which she would plead guilty to both charges in exchange for the State's agreement that it would not recommend a sentence in excess of three years' imprisonment. The circuit court admonished defendant as to, among other things, the range of penalties that she faced. Specifically, although the State was confined in its sentencing recommendation, the court stated that it was able to impose the maximum term of five years in the Illinois Department of Corrections and a fine of up to $25,000. The court did not mention restitution could be a part of its order.

¶ 6            The State provided the following factual basis:

            "From March 1st to April 28th in 2022, this Defendant utilized assets of a person, an elderly person, Teresa K. Boward ***, in that she obtained property from Teresa Boward consisting of United States currency; did so by use of a debit card that was used without consent."

Defendant stipulated to the factual basis and the circuit court accepted the guilty plea.

¶ 7            The case proceeded to sentencing. The State offered that "the amount of restitution

is agreed between the parties," and that "[t]here will be an order for [$]1,500." When the circuit court asked defense counsel whether she agreed with the representation that there would be an agreed order calling for $1500 in restitution, she replied, "Yes, your Honor." The court then heard victim impact statements from Boward's daughter and daughter-in-law. Defendant made a statement in allocution, maintaining her innocence and that Boward had given her permission to use the debit card. Defendant stated she had a gambling problem she was attempting to address through counseling and was also dealing with medical issues. Further, she accused Boward's daughter of not tending to her mother's needs and only wanting Boward's money, which Boward did not want to give her.

¶ 8    The circuit court sentenced defendant to two concurrent terms of five years' imprisonment and restitution in the amount of $1500. In imposing the sentences, the court stated that it considered "the defendant's statement in allocution, and also the victim impact statements," as well as deterrence, defendant's prior criminal record, the very serious nature of the charges, and the complete lack of any remorse shown by defendant. In explaining its reasoning for the sentence the court explained:

> "THE COURT: So, here, I normally try to go through this in a fairly methodical way and address the factors that are present in aggravation, the factors present in mitigation, and any other factors that stand out in my mind. And I'm trying to do that this time, but I am really just almost speechless over that statement in allocution by the defendant.
>
> This is not about just you; and, quite frankly, I don't believe anything that comes out of your mouth. You show up today for your sentencing hearing for the first time with a shoulder brace and a neck brace; I think it's a ruse on your behalf.

I do have a letter that would confirm that you have some shoulder injury. I have nothing to confirm any neck injury; so, I don't believe one word you're telling me about your neck injury. And it appears to be degenerative changes. And it actually, Defendant's Exhibit 3, which appears to be the x-ray, indicates, if there is concern for rotator cuff tendon tear, consider MRI of the right shoulder. So, I don't believe that there's any serious medical condition. I would note that the [pre-sentence investigation report] contains a number of other alleged medical conditions; however, there is absolutely no proof of any of that, no verification from anyone, and I have a chronic liar and thief sitting in front of me that I need to sentence today.

And it's upsetting I guess because, despite everything that has happened, I have the victims present in court, they gave very heartfelt, sincere victim impact statements that were just a small glimpse into what pain, heartbreak, anguish the actions of [defendant] caused their family, not just in terms of the theft itself, which I suppose in the grand scheme of things is kind of, class 3 felony, but that doesn't appear to be the issue for the victims, it's how that affected their loss of their mother and their opportunity to mourn appropriately and as a family. Yet the defendant just completely disregards that and makes up some story that in fact the only person suffering here is the defendant and she was carrying out the wishes of their mother. No proof whatsoever of any of this, none; everything you've said, I don't believe. I don't believe condition of the house as you describe it, I don't believe the condition of the care as you describe it, I don't believe any of that. It's all very self-serving, nothing but excuses, empty words; there's a complete lack of remorse,

and you're not accepting any responsibility for anything that you've done here to effect this family.

*** But I have to say that the manner in which [defendant] has chose to proceed in regards to her statement in allocution and comments to probation is a first, just, I really don't even know what to say. I feel for the victims having to listen to what you just said as if their mother is up in heaven worried about you. There should never be a situation where we rely on our friends to help us in our time of need and then they take advantage of our elderly people; they do need to be protected. And I'm pretty sure that there aren't any of our elderly parents who, relying on their Social Security income only, would rather have a stranger gamble their money away than use it to pay for their own living needs or help to pay for their funeral expenses. I just, that is so incredible for you to say, that I believe you are one of the worst criminals I've ever seen in this courtroom.

THE DEFENDANT: Wow.

THE COURT: Yeah, wow is right. You sit there and you be in shock at how arrogant you are, how disrespectful you are to the victims of this family.

And your prior record is a factor as well, clearly a pattern of theft, theft, theft, theft. For you not to have any remorse whatsoever, zero, and to sit there and act like this is all you and that you did what you needed to do to help and then you come in here and shake your head at me and show up in a sling for the first time with a neck brace on as if we're all supposed to feel sorry for you.

This is a serious matter. I have a very insincere defendant in front of me; and I am pretty well convinced that if given the chance tomorrow, you would do

the same thing. And sadly, I understand the concern the family has over the coincidence of the timing of Ms. Boward's passing; I understand the concern you have. To be clear for the record, I am not drawing a link or considering that as a factor in aggravation, but I can understand and appreciate the concern the family has.

So, there are very strong aggravating factors in this case, deterrence, the defendant's prior record, very serious nature of the charges and the complete lack of any remorse on the part of [defendant] and to the contrary, piling on excuses and alleged medical issues to try to garner sympathy from this Court on the day of her sentencing. That puts the whole system just in a bad light; I'm offended that you would even think that you could do something like that.

Here, I believe without any doubt, that a term of probation would deprecate the serious nature of the charges and be inconsistent with the ends of justice. I believe that this defendant would take the opportunity to do this again if given that chance. This is a class 3 felony. The range is two to five years. I recognize what the State has recommended; but in this particular situation, given the very strong factors, I think, and I don't do this very often, but I think a maximum sentence is appropriate and I am going to sentence the defendant to five years in the Illinois Department of Corrections on Counts 1 and 2. That's not much of a sentence to be honest with you, because you get 50 percent good time, and they will run concurrent with each other. So, I'll tell you, I wasn't leaning towards five years when I walked in here, I actually was leaning towards three years; and then you made just the most grotesque statement in allocution, and hearing the arguments of the attorneys and

hearing the victims read the victim impact statements, I absolutely believe a maximum sentence, based upon your prior record and deterrence, is appropriate here. *** I will impose the agreed-upon restitution in the amount of $1,500."

¶ 9 Defendant filed a motion to withdraw her guilty plea arguing that she was innocent of the charges and wished to proceed to trial. Alternatively, defendant requested that the circuit court reduce her sentence due to the fact the sentence was unduly harsh and because defense counsel failed to produce evidence at the sentencing hearing. The court denied the motion, finding the sentence was within the applicable range and any mitigating factor was "overcome" by those in aggravation.

¶ 10 This appeal followed.

¶ 11 II. ANALYSIS

¶ 12 On appeal, defendant argues that: (1) she should be allowed to withdraw her guilty plea where the circuit court failed to admonish her regarding restitution and, in the alternative, counsel was ineffective for failing to preserve this argument; (2) her conviction for unlawful use of a debit card violates one-act, one-crime principles; and (3) the sentence imposed was excessive and based on the sentencing judge's personal animus towards her evidenced by comments at the sentencing hearing.

¶ 13 A. Restitution

¶ 14 We first address defendant's claim that she should have been allowed to withdraw her guilty plea because the circuit court failed to admonish her before she pleaded guilty that she could be liable for restitution. Defendant's claim amounts to an argument that the court did not substantially comply with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012).

¶ 15 Rule 402 was adopted to ensure compliance with due process requirements that a

guilty plea be affirmatively shown to be entered into voluntarily and intelligently. *People v. Fuller*, 205 Ill. 2d 308, 322 (2002) (citing *People v. Burt*, 168 Ill. 2d 49, 64 (1995), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). Rule 402(a) requires, before accepting a plea of guilty, the circuit court must admonish the defendant of "the minimum and maximum sentence prescribed by law." Ill. S. Ct. R. 402(a)(2) (eff. July 1, 2012). Generally, only substantial compliance with Rule 402(a) is necessary. *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009). The failure to admonish a defendant in conformity with the rule does not in itself establish a basis to reverse the circuit court. Rather, defendant must show the error in admonishments resulted in the denial of real justice or amounted to prejudice. *Id*. at 139.

¶ 16   Normally, whether the circuit court substantially complied with Rule 402 is reviewed *de novo*. *People v. Chapman*, 379 Ill. App. 3d 317, 326 (2007). However, defendant acknowledges that she failed to preserve this claim in the court below and requests plain error review. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (finding that to preserve an issue for review, a party must raise the issue at trial and in a written posttrial motion). Before proceeding to plain error review, we note that defendant in her briefing asks for review under the second prong of plain error. Under the second prong, we determine whether the " 'error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Galarza*, 2023 IL 127678, ¶ 45 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). The inherent contradiction in defendant's assertion that this claim is amenable to second prong plain error review is that, in the second prong, prejudice is presumed (*People v. Williams*, 2022 IL 126918, ¶ 55), but in order to establish insufficient admonishments that require reversal, defendant must show the denial of real justice or *prejudice*. *Dougherty*, 394 Ill. App. 3d at 139. This inherent contradiction instructs our conclusion that

defendant's claim is not amenable to review under the second prong of plain error.

¶ 17        At oral arguments, defendant seemingly acknowledged our unexpressed concerns of evaluating this claim under the second prong of plain error by declaring there was authority that supported the review of this claim under the first prong of plain error and as ineffective assistance of counsel. Nonetheless, even if we continued our plain error review under the first prong, defendant's claim does not require reversal. Here, the State concedes the circuit court rendered imperfect admonishments in that the court failed to give any admonishments that defendant would be liable for restitution upon her plea of guilty. Nonetheless, the State argues that this error does not amount to plain error as defendant suffered no prejudice. Having found the court omitted admonishments required by the rule, we must determine whether defendant suffered prejudice as a result of the missing admonishment.

¶ 18        Defendant cites *People v. Snyder*, 2011 IL 111382, as support for the argument she should have been allowed to withdraw her guilty plea. In *Snyder*, the circuit court accepted the defendant's negotiated guilty plea and failed to admonish the defendant about the possibility of a restitution order or that she could face fines. *Id.* ¶ 7. Our supreme court found it was undisputed the circuit court failed to substantially comply with Rule 402(a)(2) (*id.* ¶ 20) and pursuant to *People v. Seyferlich*, 398 Ill. App. 3d 989 (2010), the appropriate remedy for the failure to admonish the defendant about the possibility of being ordered to pay restitution was to allow her the opportunity to withdraw her guilty plea (*id.* ¶ 31).

¶ 19        We find *Snyder* is distinguishable from the case at bar. See *People v. Palmer*, 104 Ill. 2d 340, 345-46 (1984) ("[T]he precedential scope of a decision is limited to the facts before the court."). In *Snyder* the sentencing court failed to admonish defendant about *either* fines *or* restitution; in other words, defendant was not apprised of *any* financial consequence which might

flow from pleading guilty. Here, on the other hand, defendant was admonished that if she pleaded guilty, she could face monetary sanctions in the form of fines in an amount up to $25,000.

¶ 20        We find instructive two pre-*Snyder* decisions addressing situations similar to the one in this case. In *People v. Thompson*, 375 Ill. App. 3d 488, 490 (2007), the defendant entered into a partially negotiated plea agreement. On appeal, the defendant argued that although he was admonished he could face up to a $25,000 fine, he was not told he could be ordered to pay restitution. *Id.* The sentencing court subsequently imposed an order of restitution for $1242.69. *Id.* at 494. The First District affirmed, finding that the failure to admonish defendant about the possibility of restitution did not result in prejudice because he was admonished he could face monetary penalties in the amount of $25,000 and the imposed monetary penalty including restitution fell below that amount; thus, the defendant did not receive a more onerous sentence than set forth in the sentencing court's admonishments. *Id.* at 494. Accordingly, the imperfect admonishments did not deny the defendant real justice. *Id.*

¶ 21        The logic expressed in *Thompson* was followed by the Second District in *People v. Petero*, 384 Ill. App. 3d 594 (2008). In *Petero*, the sentencing court similarly admonished the defendant of a possible monetary fine as a part of his sentence following a negotiated guilty plea agreement but failed to mention restitution could also be a component of the sentence imposed. *Id.* at 596-97. On appeal, it was determined that the defendant did not suffer prejudice from the imposition of restitution absent a specific admonishment where the combined total of monetary fines and fees fell below the amount the defendant was informed he could be liable. *Id.* at 600. As a result, he did not receive a more onerous sentence and he was not denied real justice. *Id.*

¶ 22        We believe that *Thompson* and *Petero* are relevant and persuasive here. Defendant was admonished that a possible financial consequence of her plea was a fine up to $25,000. The

- 10 -

amount imposed was substantially less, and it took the form of restitution rather than a penalty. But the logic of *Thompson* and *Petero* is sound. Because restitution was ordered in an amount less than that which defendant was told could be imposed as a fine, she was not denied real justice as a result or otherwise prejudiced by the lack of an admonition concerning possible restitution.

¶ 23     Defendant argues against this conclusion, stating there is a clear distinction between fines and restitution as evidenced by statute and caselaw. See 730 ILCS 5/5-5-6, 5-9-1 (West 2022); *People v. Copeland*, 2020 IL App (2d) 180423, ¶ 15 ("[R]estitution is not a cost, fine, or fee."). We agree with the distinction but, in this context, are not persuaded that there is a difference. It is true, as defendant notes, that the circuit court would have been required to consider defendant's "financial resources and future ability" to pay when "determining the amount" of a fine (730 ILCS 5/5-9-1(d)(1)), but the amount of restitution here was *stipulated* to by defendant: $1500. Furthermore, even if the court is not required to consider defendant's ability to pay when restitution is imposed, her ability to pay must be considered at the time a restitution order is enforced. See *People v. Edwards,* 135 Ill. App. 3d 671, 679 (1985). Defendant's attempt to conjure a difference between fines and restitution that is *relevant to this context* is entirely unpersuasive. Finally, and more fundamentally, any difference between a fine and restitution does not automatically result in the conclusion that prejudice or a denial of real justice is manifest from the absence of a specific admonition regarding restitution. See *People v. Whitfield*, 217 Ill. 2d 177, 193 (2005) (noting that a sentencing court's failure to admonish a defendant concerning a term of mandatory supervised release (MSR) was not of a constitutional nature where the sentence plus the term of MSR fell below the maximum sentence set forth in the admonishments).

¶ 24     Having found defendant did not suffer prejudice from the imperfect but substantially compliant admonishments, she also cannot establish ineffective assistance of counsel

for failing to preserve the issue. See *People v. Glasper*, 234 Ill. 2d 173, 216 (2009) (finding the defendant could not meet the requirements to show ineffective assistance of counsel in the absence of plain error). Accordingly, we must honor defendant's procedural forfeiture.

¶ 25                                   B. One-Act, One-Crime

¶ 26          Next, we address defendant's contention that because the charge of financial exploitation of an elderly person was based on the same actions giving rise to the charge of the unlawful use of a debit card (including the aggravating factor of doing so against an elderly person), the unlawful use of a debit card conviction should be vacated.

¶ 27          "The one-act, one-crime rule prohibits convictions for multiple offenses that are based on precisely the same physical act." *People v. Smith*, 2019 IL 123901, ¶ 13. Our analysis of this issue requires that we first determine " 'whether a defendant's conduct consisted of separate acts or a single physical act.' " *People v. Stull*, 2014 IL App (4th) 120704, ¶ 42 (quoting *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996)). "An ' "[a]ct" ' is defined as 'any overt or outward manifestation which will support a different offense.' " *People v. May*, 2021 IL App (4th) 190893, ¶ 51 (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)). Even where the challenge to a violation of the rule was forfeited by the defendant, as it was here, such a violation is reversible error under the second prong of the plain-error doctrine. *Smith*, 2019 IL 123901, ¶ 14.

¶ 28          Defendant points out that the mittimus entered by the circuit court does not specify whether defendant pleaded guilty to financial exploitation of an elderly person pursuant to subsection (a)(1) (requiring deception or intimidation) or (a)(2) (requiring only illegal use of asset or resource). See 720 ILCS 5/17-56(a)(1), (a)(2) (West 2022). However, because the State's factual basis did not include a proffer as to deception or intimidation, defendant concludes judgment must have been entered on subsection (a)(2). The State does not contest defendant's interpretation of

the mittimus. A review of the charging instrument reveals that the State alleged defendant committed financial exploitation by "knowingly and by deception" obtaining control over the victim's property. Despite this language in the charging instrument, the State abandoned this view during the plea hearing, where it did not proffer that defendant engaged in deception. Therefore, we find defendant's interpretation of the mittimus reasonable and continue our analysis under the assumption defendant pleaded guilty to financial exploitation of an elderly person pursuant to subsection (a)(2). 720 ILCS 5/17-56 (a)(2) (West 2022).

¶ 29        Examining both the charging instrument and the factual basis stated during the plea hearing, we observe that the State alleged a single time period for both offenses, concluding that defendant obtained property from the victim "consisting of United States Currency [and] did so by use of a debit card that was used without consent." Using the debit card to obtain cash is a series of connected acts that the State chose to treat as a series of offenses. However, "[f]or the State to properly obtain multiple convictions for connected acts that might be treated as a series of offenses, the State must apportion the acts to the offenses in the charging instrument and at trial." *People v. Williams*, 384 Ill. App. 3d 327, 340 (2008). The State failed to apportion defendant's conduct between the two offenses in the charging instrument, and the factual basis also shows the two convictions were based on the same conduct.

¶ 30        The State contends that defendant's conduct consisted of separate acts where the offense of financial exploitation of an elderly person includes standing in a position of trust with an elderly person, which it contends was an "act" sufficiently separate from obtaining the victim's property to warrant multiple convictions. The State cites *Smith* in support of this position, where our supreme court explained "that a person can be guilty of two offenses when a common act is (1) part of both offenses or (2) part of one offense and the only act of the other offense." *Smith*,

2019 IL 123901, ¶ 18. The *Smith* court noted that it had previously provided several examples where a common act would support multiple convictions. *Smith*, 2019 IL 123901, ¶ 19. The court reviewed pertinent cases in *People v. Coates*, 2018 IL 121926, ¶ 16:

> "*People v. McLaurin*, [184 Ill. 2d 58, 105 (1998)] (holding that multiple convictions for intentional murder and home invasion were proper because, although both involved the same physical act of setting a fire, the physical act of entering the dwelling of the victim was a separate act that supported the home invasion offense); *People v. Marston*, [353 Ill. App. 3d 513, 519 (2004)] (holding that multiple convictions for home invasion and aggravated battery were proper despite the common act of striking the victim with a pole where the defendant's entry into the home was a separate act that supported the home invasion conviction); [*People v.*] *Lobdell*, [121 Ill. App. 3d 248, 252 (1983)] (holding that multiple convictions for residential burglary and home invasion were proper because, despite the one act of entry into the victim's home which served as the basis for both convictions, the home invasion offense involved an additional act of intentional injury and, therefore, the two offenses were not carved from precisely the same physical act); *People v. Tate*, [106 Ill. App. 3d 774, 778-79 (1982)] (holding that multiple convictions for home invasion and aggravated battery were proper despite the common act of stabbing the victim where the unlawful entry was a separate act applicable only to the home invasion offense)."

¶ 31 We are unpersuaded by the State's argument. Standing in the position of trust to an elderly person is not a physical *act* that can support a separate offense under the one-act, one-crime rule. Unlike *Smith*, where punching the victim and taking the bank bag served as the separate overt

acts needed to support each charge (*Smith*, 2019 IL 123901, ¶ 20), standing in a position of trust is not an overt act or outward manifestation that can remediate the State's reliance below on only the use of the debit card to obtain currency. To the contrary, standing in the position of trust to another appears more akin to an individual's status as a felon rather than an overt act. As the court in *Coats* explained "[a] felon's status is not an 'act' but, rather, a state of being," and a defendant's status does not factor into our analysis at this point of our review for a violation of the one-act, one-crime rule. *Coats*, 2018 IL 121926, ¶ 27. Standing in the position of trust to another is simply a state of being, not a separate physical act.

¶ 32        Our research does not reveal, and the State does not direct us to, any authority that would support its argument. Rather, our review of this argument has led us to *People v. Bailey*, 409 Ill. App. 3d 574 (2011), where the defendant was charged, convicted, and sentenced on four counts of financial exploitation of an elderly person and two counts of theft. On appeal the State "rightly" conceded the theft offenses should be vacated pursuant to the one, act-one, crime rule because the charges were based on the same conduct. *Id.* at 597. A similar result is warranted here.

¶ 33        "When two convictions violate the one-act, one-crime doctrine, the sentence should be imposed on the more serious offense, and the less serious offense should be vacated." *People v. Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 114 (citing *People v. Artis*, 232 Ill. 2d 156, 170 (2009)). Here, both of the offenses are Class 3 felonies and where punishments for the offenses are identical, reviewing courts must consider which offense requires the more culpable mental state. *In re Samantha V.*, 234 Ill. 2d 359, 379 (2009). While both require the perpetrator to knowingly engage in illegal conduct, the financial exploitation of an elderly person charge also requires the individual stand in a position of trust to the victim, violate that trust, and that the victim be a member of a class the legislature has decided needs additional protections, the elderly and

disabled. Accordingly, the charge of financial exploitation of an elderly person is the more serious of the two charges, so we vacate the conviction and sentence for unlawful use of a debit card. We direct the circuit clerk to correct the mittimus to reflect our decision.

¶ 34                                    C. Sentence

¶ 35        Defendant's final argument is that the circuit court erred in imposing the maximum sentence available under the law. Specifically, she argues that the court considered improper factors and comments by the court evidenced a "personal disdain" for defendant resulting in bias in sentencing. However, after reviewing defendant's argument, it is clear she is attempting to argue judicial bias during her sentencing hearing and is conflating that argument with the improper consideration of factors at sentencing. Accordingly, we will address whether the record demonstrates bias by the sentencing court.

¶ 36        A sentencing judge is presumed to be impartial, and the party claiming bias bears the burden of overcoming this presumption. *People v. Fisher*, 2023 IL App (4th) 220717, ¶ 31. " 'There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court.' " *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18 (quoting *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22). To demonstrate bias or prejudice by the sentencing court, the defendant must present evidence beyond an unfavorable result. *People v. Rademacher*, 2016 IL App (3d) 130881, ¶ 47. Rather, what is required is " 'a showing of animosity, hostility, ill will, or distrust towards [a] defendant.' " *Id.* (quoting *People v. Vance*, 76 Ill. 2d 171, 181 (2016)). We review *de novo* whether allegations of bias against a defendant require a new sentencing hearing. *Fisher*, 2023 IL App (4th) 220717, ¶ 31.

¶ 37        Defendant argues that the circuit court's comments—that defendant's statement in

allocution was "grotesque" and left the court "speechless," and that the crime itself and the impact it had on the victim and her family was "upsetting"—show that the court imposed the maximum sentence because of personal animus. Defendant also points to the court's comment that defendant was "one of the worst criminals I've ever seen in this courtroom." After reviewing the sentencing hearing in its entirety, we conclude that no error occurred. While undoubtedly the comments from the court constituted pointed criticism of defendant, the crime she committed, and the attendant circumstances, it is well established that "harsh criticism, based on the particular facts of a defendant's case, does not constitute any sort of evidence of prejudice derived from personal bias." *Rademacher*, 2016 IL App (3d) 130881, ¶ 48.

¶ 38       Furthermore, a defendant's "continued protestation of innocence and a lack of remorse may convey a strong message to the trial judge that the defendant is an unmitigated liar and at continued war with society," matters which "are proper factors to consider in imposing sentence." *People v. Ward*, 113 Ill. 2d 516, 528 (1986). Defendant went from denial (stating that she was innocent and had permission to use the card), to justification (that she had a gambling problem), to shifting blame (criticizing the care provided to Boward by her daughter). Defendant's strikingly defiant statement in allocution gave the circuit court every reason to consider it as a sentencing factor in aggravation. We also note that the word "prejudice" itself tells us that it means *pre*-judging, not judging *per se.* The court's comments were in direct response to defendant's statements made in allocution, and the court's judgment—not prejudgment—of those statements was understandably harsh. The record falls short to demonstrating that the court's statements were born out of personal animus towards defendant.

¶ 39       Defendant also argues that the fact the State recommended, and the circuit court initially considered, a sentence of only three years weighs in favor of reversal. Again, we are

unable to come to the same conclusion given the court's explicit weighing of factors on the record. Further, defendant argues the fact that defendant pleaded guilty and acknowledged her gambling addiction equates to signs of remorse. While an admission of fault has been recognized as a showing of remorse and pleading guilty can be viewed as mitigating, the presence of those mitigating factors does not require the sentencing court to reduce a sentence from the maximum allowed. *People v. Pippen*, 324 Ill. App. 3d 649, 653 (2001). Here, the court could have reasonably concluded that the mitigating effects of defendant's guilty plea or alleged remorse for her actions were outweighed by aggravating factors. We also must note that defendant continued to deny that she committed the offense, which contradicts the contention that she felt remorse. Moreover, a court is presumed to consider mitigating factors when presented absent an explicit showing to the contrary. *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 42. Defendant essentially asks this court to reweigh the sentencing factors, which we decline to do. See *People v. Alexander*, 239 Ill. 2d 205, 213 (2010) (stating a reviewing court may not substitute its judgment for that of the sentencing court based on a reweighing of sentencing factors).

¶ 40        To the extent that defendant's argument can be interpreted as contending the circuit court considered improper factors in determining a sentence, that argument is also without merit. As explained above, the court repeatedly enumerated the factors it was considering and those that it found to be most important. Commenting on defendant's lack of remorse, likelihood of recidivism, and criminal history were not improper. In fact, none of the factors mentioned were improper.

¶ 41        Therefore, the circuit court did not err in sentencing defendant.

¶ 42                                III. CONCLUSION

¶ 43        For the reasons stated, we vacate the conviction in count II and otherwise affirm

the circuit court's judgment. The circuit clerk is directed to correct the mittimus to reflect that the conviction in count II is vacated.

¶ 44   Affirmed in part.