NOTICE
Decision filed 06/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230542-U

NOS. 5-23-0542, 5-23-0543, 5-23-0544 cons.

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | Nos. 22-CF-63, 22-CF-119, |
| | ) | 22-CF-125 |
| SHEILA K. BROWN, | ) | |
| | ) | Honorable Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice McHaney and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the defendant's convictions and sentences because the defendant waived her argument regarding improper admonishments and forfeited her argument regarding ineffective assistance of counsel regarding admonishments, the defendant's sentences were not excessive, and the circuit court did not consider an improper factor when sentencing the defendant.

¶ 2                          I. BACKGROUND

¶ 3    On February 25, 2022, the defendant was charged, by information, with one count of retail theft, enhanced, a Class 4 felony, in Jefferson County case No. 22-CF-63. The information alleged that on February 6, 2022, the defendant committed the offense of retail theft by knowingly taking possession of merchandise from Walmart that had a value not in excess of $300 when she knowingly took possession of merchandise offered for sale by Walmart with the intention of depriving the merchant permanently of the possession of such merchandise without paying the full

1

retail value of such merchandise. Further, the defendant had been previously convicted of retail theft in Jefferson County case No. 03-CM-606. A warrant of arrest was issued for the defendant and bail was set at $20,000. The defendant was arrested on March 2, 2022, and she posted the required 10% of the bond, and was released from jail the same day. Thereafter, the defendant was indicted by a grand jury for the same offense on March 17, 2022.

¶ 4 On April 14, 2022, the defendant was charged, by information, with two counts of retail theft, a Class 3 felony, in Jefferson County case No. 22-CF-119. The information alleged that on January 7, 2022, and January 9, 2022, the defendant committed the offense of retail theft by knowingly taking possession of merchandise from Walmart that had a value exceeding $300 when she knowingly took possession of merchandise offered for sale by Walmart with the intention of depriving the merchant permanently of the possession of such merchandise without paying the full retail value of such merchandise. A warrant of arrest was issued for the defendant and bail was set at $50,000. The defendant was arrested on April 14, 2022. The defendant's bond was reduced to $30,000; however, she did not post this bond. Thereafter, the defendant was indicted by a grand jury for the same offenses on April 21, 2022.

¶ 5 On April 18, 2022, the defendant was charged, by information, with one count of burglary, a Class 2 felony, in Jefferson County case No. 22-CF-125. The information alleged that on April 10, 2022, the defendant committed the offense of burglary when she knowingly and without consent or authority entered a building belonging to Pepsi Mid-America with the intent to commit a theft therein. Additionally on April 18, 2022, the defendant was charged, by information, with one count of identity theft, a Class 3 felony, in Jefferson County case No. 22-CF-126. The defendant was indicted by a grand jury for both of these offenses on April 21, 2022.

¶ 6 On June 28, 2022, a single pretrial hearing was set in all four cases, 22-CF-63, 22-CF-119, 22-CF-125, and 22-CF-126. At that hearing the defendant entered an open plea of guilty to the

charges in 22-CF-63, 22-CF-119, and 22-CF-125. The case of 22-CF-126 was dismissed as part of the plea agreement.

¶ 7     Prior to accepting the plea, the circuit court advised and admonished the defendant regarding the presumption of innocence, her right to a jury trial, her right to testify and to remain silent, the possible penalties for each charge, including extended term eligibility, the possible collateral consequences, the difference between a concurrent and consecutive sentence, and the possibility that she could be fined up to $25,000 on each of the charges. The circuit court's admonitions did not include that the defendant could be ordered to pay restitution.

¶ 8     Pursuant to the plea, the defendant was released from jail on June 28, 2022, and the cases were continued for sentencing. The defendant's sentencing hearing was held on October 6, 2022.

¶ 9     At the sentencing hearing, the circuit court confirmed the sentencing ranges for the offenses, all of which qualified for an extended term. The parties agreed that since the offense in 22-CF-125 occurred while the defendant was out on bond that the sentence for burglary, 22-CF-125, must be consecutive to the sentences for retail theft, 22-CF-63 and 22-CF-119, which would be concurrent. Minor amendments were made to the presentence investigation report (PSI) and the circuit court advised it would consider the amended PSI when sentencing the defendant.

¶ 10     Next, the circuit court heard evidence in aggravation. The State called Brittany Hand, an employee of Pepsi Mid-America, to testify. Hand testified that upon arriving to the warehouse on Monday, April 11, 2022, the delivery that had been made over the weekend had been ransacked. She testified that some totes were completely empty and others had been opened and left scattered through the building. She obtained the video surveillance footage of the area which showed a man and women entering the building and removing the totes and snacks and loading them into their vehicle.

3

¶ 11     Hand testified that the value of the goods in the empty totes to be $1,079 and some change, but she did not know what items might have been taken from the totes that were opened but not emptied. The totes contained snacks that were to be sold in vending machines including items such as crackers, candy bars, chips, and pastries. The contents of the totes were individualized based on the items ordered by customers. Each tote contained a list of what was packed in it and this was used to calculate the value of what was stolen.

¶ 12     Next, Robert Kane, a detective with the Mt. Vernon Police Department, testified. Kane testified that he was familiar with the defendant through multiple interactions with law enforcement. Kane investigated reported retail thefts from Walmart and Kroger in Mt. Vernon. He reviewed security surveillance footage and identified Ashley Houseworth as a suspect. Kane spoke to Houseworth who confessed to being involved in a retail theft plan that also involved the defendant and Jasmine Hughey, the defendant's daughter. The retail theft plan involved stealing KitchenAid mixers and then selling them on Facebook Marketplace.

¶ 13     Kane testified that he also interviewed Jasmine Hughey. Hughey provided a statement that corroborated what Houseworth said. Hughey and the defendant paid Houseworth to place items in a shopping cart and push the cart past the last point of sale.

¶ 14     Kane made contact with the defendant when he stopped her for a traffic infraction while she was driving. The defendant had a warrant out, and she was arrested. The defendant admitted that she was involved in the theft plan with Hughey and Houseworth. The defendant also admitted to being involved in the burglary at Pepsi Mid-America.

¶ 15     In mitigation, the defendant testified on her own behalf. She identified a power of attorney that was prepared on July 19, 2022, that would allow Candace Capps to care for her minor children while she was incarcerated. The defendant testified that her children were currently in Texas with

4

Capps. Defendant also offered three exhibits in mitigation: the power of attorney for the care of her children, an email from Maggie Eubanks from probation, and a letter from Kimberly Yanez.

¶ 16    After advising the defendant of her appeal rights, the circuit court stated that it had considered the testimony of the witnesses, the exhibits, and the PSI. Regarding the factors in aggravation, the circuit court declined to adopt or consider factor 2 in aggravation, that the defendant received compensation for committing the offense. The circuit court did consider factor 3—the defendant's history of prior criminal activity, factor 7—a sentence necessary to deter others from committing the same crime, and factor 12—that defendant was convicted of a felony while on bail. In mitigation, the circuit court considered factor 1—that defendant's criminal conduct did not cause nor threaten serious physical harm to another.

¶ 17    After reviewing the relevant statutory factors, the circuit stated as follows:

"[A] couple of things I want to say here. *** The Court is not going to consider whether you were going to go to Texas or not or what you were going to do. ***

I will say there's been, you know, comments made by the defense that this was the stealing of food, although it's totes of food and so on, so this is not a case from the pages of *Les Misérables*. [The defendant] is not Jean Valjean trying to steal a loaf of bread to feed the family. It's a different situation entirely so I am not moved by that at all. It was an organized criminal enterprise obviously.

Another point is that this court is not righteously indignant. I am just looking at the facts. The facts are, Ms. Brown, that you have been doing this kind of thing for much of your life, and stealing from stores—I recognize the fact that Walmart is an enormous corporation, I recognize that Pepsi Cola is an enormous corporation, and it's probably a drop in the bucket, if that, to them. But, that's why we have these laws is because every time things are stolen from a business, it just runs up the cost of everybody else. And all

the other poor people trying to get by and buy as cheaply as they can at Walmart, for instance, or buy snacks, which is probably not a good idea but I am guessing some of those snacks were not totally bad for you—at any rate, it just drives up the prices and it hurts everybody. It hurts everybody. And not only your behavior takes up the time, and effort and money of the police department and the taxpayers but it also injures consumers and not rich consumers but the average person. That's the kind of thing that makes it worse, much worse.

So, um, the court wants to make it clear I do—I have sympathy for your situation. *** What I am looking at is your behavior, and thievery and burglaring a warehouse."

Further, the circuit court advised the defendant that probation or conditional discharge would deprecate the seriousness of her conduct and would be inconsistent with the ends of justice.

¶ 18    In case No. 22-CF-63, the Class 4 felony of retail theft, the circuit court sentenced the defendant to three years in the Illinois Department of Corrections (IDOC). In case No. 22-CF-119, two counts of Class 3 felony retail theft, the defendant was sentenced to five years in IDOC on each count. The circuit court announced that the sentences in 22-CF-63 and 22-CF-119 would be served concurrently. In case No. 22-CF-125, the Class 2 felony burglary offense, the defendant was sentenced to 10 years in IDOC, to be served consecutively to the sentences in 22-CF-63 and 22-CF-119. The defendant's sentence to IDOC was a total of 15 years followed by 12 months' mandatory supervised release (MSR). The circuit court did not fine the defendant and waived the costs and fees. However, the circuit court did order restitution to Pepsi MidAmerica in the amount of $1,079 in the burglary case, 22-CF-125. The $2,000 bond the defendant had posted was applied to the order of restitution.

¶ 19    On November 4, 2022, the defendant filed identical motions to withdraw guilty plea in each of the three cases. The motions contained two single-sentence paragraphs, which stated:

6

"1.That the Defendant entered an open plea of guilty to the above-styled cause(s) on June 28, 2022.

2. That the Defendant's plea of guilty was not knowingly and voluntarily made due to the Defendant's mental status at the time of said plea."

On the same day, the defendant filed identical motions to reconsider sentence in each case. The motions argued the combined sentence of 15 years was excessive, that the court improperly refused to apply the mitigating factor that the defendant did not contemplate her criminal conduct would cause or threaten serious physical harm to another, the circuit court erred in refusing to allow Candace Capps to testify via live video Zoom as a mitigation witness for the defendant, and the circuit court failed to apply mitigating factor (a)(18) regarding the defendant's children.

¶ 20     On February 28, 2023, counsel for the defendant filed an amended motion to withdraw guilty plea which was amended to include the affidavit of the defendant. The affidavit averred that when the defendant entered the open plea of guilty that she was not of sound mind due to her "mental health disorders of Bipolar and anxiety for which I was not receiving my prescribed medication." She alleged the lack of medication affected her ability to fully understand and voluntarily enter into the plea. Counsel also filed the requisite Illinois Supreme Court Rule 604(d) certificate.

¶ 21     A hearing on the motions to withdraw guilty plea and motions to reconsider sentences was held on July 13, 2023. The circuit court first heard the motions to withdraw guilty plea. The defendant rested upon the allegations contained in the amended motion and affidavit. The State opposed the motion and argued that no medical diagnosis, prescription information, nor testimony from a medical professional had been tendered to the court by the defendant, that the PSI did not support the medical diagnosis and prescriptions asserted, and that there were no concerns raised regarding the defendant's fitness at the time she entered into the plea. In response, the defendant

7

argued that the PSI indicated the defendant had been diagnosed with "bipolar, depression, anxiety, borderline personality disorder, PTSD, and impulse disorder." Defense counsel argued that the defendant's not taking certain medications affected her ability to voluntarily enter into the plea. The circuit court denied the motions to withdraw guilty plea.

¶ 22 Next, the circuit court heard testimony and arguments on the motions to reconsider the defendant's sentence. The defendant testified on her own behalf. She requested that her sentence be reduced to eight years in IDOC, so she can apply to be placed in the work release program. The work release program would allow her to be employed in a full-time job outside of prison. In addition to the testimony of the defendant, defense counsel argued that the sentence that was imposed was excessive and not geared toward the objective or restoring the defendant to useful citizenship because the crimes were nonviolent and property crimes, as well as the other points raised in the written motions to reconsider sentence. The State opposed the motions to reconsider sentence. The circuit court denied the motions to reconsider sentence.

¶ 23 The defendant filed a notice of appeal in each of the cases on July 26, 2023. Amended notices of appeal were filed on August 3, 2023. The defendant filed a motion to consolidate the separate appeals, which was granted.

¶ 24                                    II. ANALYSIS

¶ 25                    A. Admonishments Before Guilty Plea and Rule 604(d)

¶ 26 On appeal, the defendant argues the circuit court failed to admonish her that she could be ordered to pay restitution prior to her open guilty plea and due to the lack of this admonishment her plea was not knowing and she should be allowed to withdraw it. The defendant acknowledges that she did not raise this issue in the circuit court. On review, she asks this court to vacate her guilty plea and sentence under either the plain-error doctrine or ineffective assistance of counsel.

¶ 27                                    1. Rule 604(d)

¶ 28    The defendant's arguments on appeal differ from the arguments she presented to the circuit

court in her original motions to withdraw guilty plea and her amended motions to withdraw guilty

plea. In the circuit court, she asserted her plea was not made voluntarily because she had been

denied medication for mental health issues.

¶ 29    Following briefing and oral argument in this case, the Illinois Supreme Court issued the

decision of *People v. Ratliff*, 2024 IL 129356. We granted the State's motion to cite this additional

authority, and we ordered supplemental briefing regarding the implications of the *Ratliff* decision.

In *Ratliff*, our Illinois Supreme Court exercised its supervisory authority to provide direction to

inferior tribunals on issues concerning, *inter alia*, the finality of judgments pursuant to guilty pleas

and the applicability of supreme court rules. *Id.* Accordingly, we will follow its direction in the

present matter.

¶ 30    Rule 604(d) applies to appeals by a defendant from a judgment entered upon a plea of

guilty. It provides:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the
>
> defendant, within 30 days of the date on which sentence is imposed, files in the trial court
>
> a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea
>
> is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." Ill.
>
> S. Ct. R. 604(d) (eff. July 1, 2017).

Additionally, "[t]he motion shall be in writing and shall state the grounds therefor" and "[u]pon

appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw

the plea of guilty and vacate the judgment shall be deemed waived." *Id.*

¶ 31    *Ratliff* found that:

"Rule 604(d) is unmistakably clear: Any issue not raised in a posttrial motion is 'waived' on appeal. Though forfeiture may be a limitation on the parties, and not this court, we have never stated that the same is true of waiver, and with good reason. Forfeiture may be inadvertent—a failure to make a timely assertion of a right. [Citation.] Waiver, by contrast, is never inadvertent because it is an intentional relinquishment of a right." *Ratliff*, 2024 IL 129356, ¶ 26.

In this case, because the defendant did not raise the circuit court's Rule 402 violation in her 604(d) motions to withdraw her guilty plea, she has waived this issue. Accordingly, it is not subject to plain error review by this court as plain error review applies only to forfeited claims and not waived claims. *Id.* ¶ 22.

¶ 32                                   2. Ineffective Assistance of Counsel

¶ 33    As an alternative to her plain error argument, the defendant asks this court to find she received ineffective assistance of counsel. Allegations of ineffective assistance of counsel are reviewed pursuant to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cathey*, 2012 IL 111746, ¶ 23. "To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90.

¶ 34    "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The defendant's failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697. With respect to the prejudice prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had

10

no effect on the judgment." *Id.* at 691. Further, *Strickland* requires the defendant to "affirmatively prove" that prejudice resulted from counsel's errors. *Id.* at 693. "Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81.

¶ 35    On the issue of admonishment, the defendant's brief made a conclusory allegation regarding ineffective assistance of counsel. The brief stated:

> "Here, the trial court failed to provide the proper admonition, and Brown's plea was therefore unknowing as a matter of law. Whether it finds that Brown's unknowing plea was plain error or the result of her counsel's ineffective assistance, this Court should vacate Brown's guilty pleas and sentence, and then remand for further proceedings."

The only legal authority cited in the defendant's brief regarding the alleged ineffective assistance of counsel and the admonishments is a single sentence that stated, "When a claim of ineffective assistance of counsel was not raised in the trial court, [the Appellate Court's] review is *de novo*. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 89 (citing *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24)." The defendant's brief does not articulate the basis of her ineffective assistance of counsel argument and does not set forth how the defendant was prejudiced.

¶ 36    "[A] reviewing court is not simply a depository into which a party may dump the burden of argument and research." *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. This is because a reviewing court "cannot be expected to formulate an argument for defendant out of whole cloth." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13. The appellant is required to set forth her points and the reasons therefor with citation to authority, and points not argued are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). As the defendant's brief fails to support her argument that she received ineffective assistance of counsel, this argument is forfeited on appeal.

11

¶ 37    Forfeiture aside, we find the reasoning of our colleagues in the Fourth District persuasive as set forth in *People v. Dillon*, 2024 IL App (4th) 230261-U. Generally, substantial compliance with Rule 402(a) is sufficient. *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009). In order for a defendant to show that an error to admonish a defendant in conformity with Rule 402(a) is a basis to reverse the circuit court the defendant must show that the error in admonishment resulted in a denial of real justice or amounted to prejudice. *Id.* at 139.

¶ 38    In the present matter, like in *Dillon*, the defendant cites *People v. Snyder*, 2011 IL 111382, as support for her argument that she should be allowed to withdraw her guilty plea. We agree with the *Dillon* court and find *Snyder* is distinguishable from the present case because in *Snyder* the court failed to admonish the defendant about *either* fines *or* restitution. Accordingly, the defendant was not apprised of any financial consequences. The present case is analogous to the cases of *People v. Thompson*, 375 Ill. App. 3d 488 (2007), and *People v. Petero*, 384 Ill. App. 3d 594 (2008). In *Thompson* and *Petero*, the respective defendants were admonished regarding monetary fines that could be imposed upon them as part of their sentence; however, the admonishment did not include the possibility of an order to pay restitution. *Id.* In each case, it was determined that the defendant had been admonished about a potential fine that was in excess of the restitution they were ultimately ordered to pay. *Id.* Accordingly, they did not receive a more onerous sentence and were not denied real justice. *Id.*

¶ 39    The same is true for the defendant in this case. She was admonished that she could face a monetary fine of up to $25,000. Ultimately, the circuit court did not impose a fine; rather, the defendant was ordered to pay restitution in the amount of $1,079. The restitution imposed on the defendant was far less onerous than the potential fines she faced. The restitution order was satisfied from the funds deposited as part of the defendant's bail. We find that the defendant did not suffer

12

prejudice from the imperfect, but substantially compliant, admonishments, and thus would be unable to establish she received ineffective assistance of counsel.

¶ 40                                B. Change in the Sentencing Law

¶ 41    Next, the defendant argues that she should have received the benefit of a change in the sentencing laws that occurred after she was sentenced, but before the circuit court ruled on her motion to reconsider her sentence. The amendment to the law at issue became effective on December 6, 2022, as Public Act 102-1104.

¶ 42    Prior to December 6, 2022, the applicable statute stated:

> "The court shall impose consecutive sentences *** (8) If a person charged with a felony commits a separate felony while on pretrial release or in pretrial detention in a county jail facility or county detention facility, then the sentences imposed upon conviction of these felonies shall be served consecutively regardless of the order in which the judgments of conviction are entered." 730 ILCS 5/5-8-4(d)(8) (West 2020).

As of December 6, 2022, the applicable statute now states:

> "If a person admitted to pretrial release following conviction of a felony commits a separate felony while released pretrial or if a person detained in a county jail facility or county detention facility following conviction of a felony commits a separate felony while in detention, then any sentence following conviction of the separate felony may be consecutive to that of the original sentence for which the defendant was released pretrial or detained." 730 ILCS 5/5-8-4(c)(5) (West 2024).

¶ 43    At the time the defendant was sentenced, the statute required the imposition of consecutive sentences. Now, the defendant is requesting that her sentence be reconsidered due to the change in the statute which became effective after she was sentenced. The defendant failed to raise this issue

13

before the circuit court so she asks this court to consider her forfeited claim under either second prong plain error review or ineffective assistance of counsel.

¶ 44   The defendant relies upon the case of *People v. Spears*, 2022 IL App (2d) 210583, to support her contention that she should be allowed to elect the benefit of the amended sentencing statute when its effective date was after sentencing, but while her motion to reconsider sentence was pending. The State counters this proposition with citations to several cases from other districts which held that the date the sentence was imposed is the date of the judgment entered, and thus the defendant did not have a right to elect a change in the statute which occurred after the date the judgment was entered. One such case was *People v. Brown*, 2023 IL App (4th) 220400, ¶ 23.

¶ 45   After the initial briefing was completed in this case, the Illinois Supreme Court issued its opinion in *People v. Brown*, 2024 IL 129585. The *Brown* opinion found, *inter alia*, as follows:

> "We find the *Spears* analysis misguided, as it looked at the ruling on the amended motion to reconsider sentence instead of the actual imposition of sentence to determine when the judgment was final. In doing so, the *Spears* court failed to adhere to 'our long-standing case law holding that imposition of a sentence constitutes the final judgment in a criminal case.' *People v. Walls*, 2022 IL 127965, ¶ 23; [citation]. Thus, because the sentence had been imposed and rendered a final judgment in that case, the defendant could not elect the benefit of the newer version of the statute that took effect thereafter. It should be noted that, after *Spears* was decided, this court in *Walls* explicitly stated its disagreement with *Feldman* and overruled it. [Citation.] Given *Spears*'s similar holding, that decision is likewise overruled." *Brown*, 2024 IL 129585, ¶ 42.

¶ 46   As the defendant was not entitled to be sentenced under the newer statute which was not yet in effect when the circuit court sentenced the defendant, there was no error, so plain error review does not apply. ("The initial step in conducting plain-error analysis is to determine whether

14

error occurred at all." *People v. Walker*, 232 Ill. 2d 113, 124 (2009).) Additionally, the defendant suffered no prejudice so defense counsel did not render ineffective assistance of counsel. *Brown*, 2024 IL 129585, ¶ 44.

¶ 47                           C. Alleged Sentencing Errors

¶ 48                              1. Excessive Sentences

¶ 49     Next, the defendant contends the circuit court abused its discretion when sentencing her to a total term of imprisonment of 15 years, because the sentences were excessive as they were disproportionate to the nature of what she terms "minor crimes." The defendant asks this court to remand for a new sentencing hearing.

¶ 50     In support of her argument, the defendant points to *People v. Busse*, a case where the defendant stole $44 in quarters from a vending machine and was ultimately sentenced to 12 years' imprisonment because his criminal history qualified him as a Class X offender. 2016 IL App (1st) 142941. The First District determined the sentence in *Busse* to be disproportionate to the offense because it was based only on a petty offense, stealing $44 from a vending machine. The defendant also points to *People v. Stacey*, a case which found a cumulative 50-year sentence was disproportionate to the crime of a defendant who was convicted of "momentarily grabb[ing] the breasts of two young girls, who were fully clothed at the time, and he made lewd comments and gestures." 193 Ill. 2d 203, 210 (2000). The court ultimately found the 25-year sentences for each offense did not adhere to the constitution's mandate that penalties be determined according to the seriousness of the offense. *Id.* at 211.

¶ 51     The State counters that the circuit court did not abuse its discretion in sentencing the defendant and considered proper factors. The circuit court provided its reasoning for the defendant's sentence, which included the statutory factors. The circuit court declined to consider factor 2 in aggravation, that the defendant received compensation for committing the offense. The

15

circuit court did consider factor 3—the defendant's history of prior criminal activity, factor 7—a sentence necessary to deter others from committing the same crime, and factor 12—that defendant was convicted of a felony while on bail. In mitigation, the circuit court considered factor 1—that defendant's criminal conduct did not cause nor threaten serious physical harm to another.

¶ 52    Illinois courts have long found that a circuit court is in a better position to determine the sentence to be imposed, and thus, the imposition of a sentence is left to the sound discretion of the circuit court, rather than a court of review, and will not be altered absent an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). "The abuse of discretion standard has been viewed as the most deferential standard of review available with the exception of no review at all." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15.

¶ 53    The defendant admitted she had a significant criminal history, including seven prior felony convictions and five misdemeanors. The defendant's PSI also reported convictions from Missouri and Texas but listed them as "disposition unknown." The defendant argued that since all but one of her prior convictions are nonviolent (she was convicted of aggravated battery in 2004) and since all but one of her prior convictions resulted in sentence of no more than three years (she was sentenced to seven years' incarceration due to a 2008 narcotics related case), her sentences in the present matter are excessive due to the nature of the crimes. We disagree.

¶ 54    In case No. 22-CF-63, the Class 4 felony of retail theft, the defendant qualified for an extended term sentencing range of three to six years' imprisonment. The defendant was sentenced to three years in IDOC. In case No. 22-CF-119, which consisted of two counts of Class 3 felony retail theft, the defendant qualified for an extended term of imprisonment of 5 to 10 years on each count. The defendant was sentenced to five years in IDOC on each count. The sentences in 22-CF-63 and 22-CF-119 would be served concurrently. In case No. 22-CF-125, the Class 2 felony burglary offense, the extended sentencing range was 7 to 14 years' imprisonment. The defendant

16

was sentenced to 10 years in IDOC, to be served consecutively to the sentences in 22-CF-63 and 22-CF-119. The defendant's total sentence to IDOC was a total of 15 years followed by 12 months' MSR.

¶ 55    In this case, the circuit court did not impose the maximum penalty upon the defendant. Rather, she received the lower end of the extended term range for three of her convictions and the middle of the range for her fourth conviction. Further, the circuit court explained its reasoning for imposing the sentences and the statutory factors that were considered both in aggravation and mitigation. Additionally, the circuit court refused to consider factor 2 in aggravation, that the defendant received compensation for committing the offense, as the circuit court explained this was inherent in the offense. We are not persuaded that the defendant was in the same situation as those in the cases she relies on. The defendant did not steal change from a vending machine, but was involved in a scheme to repeatedly commit retail theft and then sell the stolen merchandise. Also, she is not facing a total of 50 years in prison. Based on the specific facts of the defendant's cases and her criminal history, the sentences imposed were within statutory guidelines and were not disproportionate to the offenses committed.

¶ 56                                    2. Improper Factor

¶ 57    Additionally, the defendant argues the circuit improperly considered the societal harm caused by the defendant's offenses when sentencing her. However, the defendant failed to object to this alleged error below. She requests this court to excuse her forfeiture of the issue under the second prong of the plain-error doctrine. Our Illinois Supreme Court has recognized that the consideration of an improper factor in sentencing affects the defendant's fundamental right to liberty and is subject to second prong plain error review. *People v. Martin*, 119 Ill. 2d 453, 458-60 (1988). Having determined that this claim is subject to plain error review, we must determine if the circuit court relied upon an improper factor.

17

¶ 58    Whether a circuit court relied upon an improper factor when imposing a sentence is a question of law subject to *de novo* review. *People v. Chaney*, 379 Ill. App. 3d 524, 527 (2008). Further, "a sentence based on an improper factor may be affirmed where the reviewing court can determine from the record that the weight the trial judge placed on the improperly considered factor in aggravation 'was so insignificant it resulted in no increase in the defendant's sentence.' " *People v. Brown*, 2019 IL App (5th) 160329, ¶ 19 (quoting *People v. Whitney*, 297 Ill. App. 3d 965, 971 (1998)). When we review a sentence based upon the alleged consideration of an improper factor in aggravation, "we consider the record as a whole and do not focus merely on a few words or statements from the trial judge." *Id.* ¶ 18.

¶ 59    In this case, in response to the defense's comments about the defendant stealing food, the circuit court stated that the defendant was not stealing food to feed her family, but as part of a criminal enterprise that detrimentally affected all members of society. However, a review of the record as a whole reveals the circuit court merely mentioned this and did not rely upon it in fashioning the defendant's sentences. The circuit court's reasoning for the defendant's sentence included statutory factors in aggravation 3, 7, and 12 and statutory factor in mitigation, factor 1. "The defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improper." *Etherton*, 2017 IL App (5th) 140427, ¶ 29. The defendant has failed to meet her burden on this issue. Accordingly, we affirm the defendant's sentences.

¶ 60                                     III. CONCLUSION

¶ 61    For the foregoing reasons, we affirm the defendant's convictions and sentences.


¶ 62    Affirmed.